Opinion by JUDGE ROMÁN
¶ 1 Defendant, Colleen Marie Loris, appeals her thirty-two-year sentence under the habitual criminal statute. We first conclude that her thirty-two-year sentence for possession with intent to distribute does not raise an inference of gross disproportionality.
¶ 2 We further conclude that the district court was required to apply the habitual criminal sentence multiplier to defendant's level 2 drug felony. Analyzing the sentencing scheme as a whole, the legislature has evinced an unmistakable intent to multiply the maximum of the presumptive range for certain drug felonies by four times in cases where the defendant has three or more prior felonies.
¶ 3 We affirm the sentence.
I. Background
¶ 4 In July 2014, defendant sold methamphetamine to three individuals. As part of the deal, she agreed to accept a handgun for the drugs. The parties gathered in a hotel room, where the sale took place. Defendant had approximately two ounces of methamphetamine with her. After the parties had been drinking and smoking methamphetamine, defendant handled the gun and it went off. The bullet struck the victim in the head, killing him.
¶ 5 The People charged defendant with second degree murder, possession with intent to distribute a controlled substance, possession of a weapon by a previous offender, and four habitual criminal counts.
¶ 6 Defendant pled guilty to possession with intent to distribute a controlled substance, manslaughter, and four habitual criminal counts. The four habitual criminal counts were based on prior state convictions for possession of a controlled substance (a class 4 felony), forgery (a class 5 felony), and possession of methamphetamine (a class 6 felony), as well as a prior federal conviction for conspiracy to distribute a controlled substance.
¶ 7 Applying the habitual criminal sentence multiplier, the district court sentenced defendant to concurrent sentences of thirty-two years for possession with intent to distribute and twenty-four years for manslaughter.
¶ 8 Defendant appeals her sentence, arguing for the first time that it is grossly disproportionate *757 in violation of the Eighth Amendment and that the district court lacked authority to sentence her under the habitual criminal statute.
II. Proportionality Review
¶ 9 Defendant contends that her thirty-two-year sentence raises an inference of gross disproportionality and therefore requires a remand for an extended proportionality review. We disagree.
A. Legal Standards
¶ 10 The Eighth Amendment prohibits grossly disproportionate sentences. People v. Deroulet , 48 P.3d 520, 524 (Colo. 2002). To ensure sentences are not disproportionate, a criminal defendant is "entitled, upon request, to a proportionality review of his sentence under Colorado's habitual criminal statute." Id. at 522. "[A]n appellate court is as well positioned as a trial court to conduct a proportionality review [in cases where] ... a refined analysis requiring inquiry into specific facts not available on the appellate record [is] unnecessary." People v. Hargrove , 2013 COA 165, ¶ 15, 338 P.3d 413 (quoting People v. Gaskins , 825 P.2d 30, 38 (Colo. 1992) ).
¶ 11 When a defendant challenges a sentence as grossly disproportionate, the reviewing court must initially conduct an abbreviated proportionality review. See Close v. People , 48 P.3d 528, 532 (Colo. 2002). This review weighs "the gravity or seriousness of the triggering crime together with the gravity or seriousness of the underlying crimes" against "the harshness of the penalty." Deroulet , 48 P.3d at 525, 527. Specifically, the court must scrutinize whether, in combination, the offenses are so lacking in gravity or seriousness as to suggest the sentence is grossly disproportionate. Id. at 524-25.
¶ 12 For purposes of an abbreviated proportionality review, certain crimes are considered per se grave or serious, while others may be grave or serious depending on their particular facts and circumstances. Hargrove , ¶ 12. For offenses that are not per se grave or serious, we "compare the offenses in light of the harm caused or threatened to the victim or society." People v. Mershon , 874 P.2d 1025, 1032 (Colo. 1994). Relevant factors include the "magnitude of the offense, whether the offense involved violence, whether the offense is a lesser included offense or an attempted offense, and the defendant's motive." People v. Oldright , 2017 COA 91, ¶ 11, --- P.3d ----.
¶ 13 As part of an abbreviated proportionality review, a court should also consider the General Assembly's current evaluation of the seriousness of the offense at issue, including any relevant amendments to criminal sentencing statutes. Id. ; see People v. McRae , 2016 COA 117, ¶¶ 22, 26, --- P.3d ---- (cert. granted July 3, 2017).
¶ 14 "[I]n almost every case, the abbreviated proportionality review will result in a finding that the sentence is constitutionally proportionate, thereby preserving the primacy of the General Assembly in crafting sentencing schemes." Deroulet , 48 P.3d at 526. Only when the abbreviated review gives rise to an inference of gross disproportionality is an extended proportionality review required. Oldright , ¶ 13 ; see also Close , 48 P.3d at 542.
¶ 15 Whether a sentence is constitutionally proportionate is a question of law that we review de novo. Hargrove , ¶ 8.
B. Analysis
¶ 16 We analyze the gravity or seriousness of the triggering crime and underlying crimes, in turn, and then proceed to weigh the gravity or seriousness of those crimes together against the harshness of the penalty.
1. Triggering Offense
¶ 17 Defendant's triggering offense of possession with intent to distribute a controlled substance is per se grave or serious.
¶ 18 "Colorado case law has consistently held that narcotics-related crimes are per se grave or serious for purposes of proportionality review." Id. at ¶ 26 ; see also Deroulet , 48 P.3d at 527. But recent cases have called into question whether all narcotics-related crimes are per se grave or serious in light of changes to the habitual criminal statute and *758 the sentencing scheme for drug offenses. See Rutter v. People , 2015 CO 71, ¶¶ 37, 42, 363 P.3d 183 (Gabriel, J., dissenting); see also Hargrove , ¶ 28.[1]
¶ 19 However, these developments primarily concern convictions for use and simple possession. See Rutter , ¶ 42 (Gabriel, J., dissenting) ("I would conclude that ... prior convictions for use and simple possession of a controlled substance were not per se grave or serious."). Indeed, the legislature made clear that these statutory changes were part of a reform aimed primarily at "users and addicts," as differentiated from "more serious offenders who are involved in drug distribution, manufacturing, or trafficking." Ch. 268, sec. 28, § 16-11.3-103(2.7)(a)(I), 2012 Colo. Sess. Laws 1403.
¶ 20 Thus, because defendant's conviction is for possession with intent to distribute-and not simple possession-it is a per se grave or serious offense.
¶ 21 But even assuming this offense is not per se grave or serious, we conclude it is grave or serious based on the facts of this case. Defendant admitted to selling drugs for profit and accepting a gun as payment. That gun went off and killed the victim. Thus, "the harm caused" to the victim and society was severe. Mershon , 874 P.2d at 1032.
¶ 22 Accordingly, defendant's triggering offense was grave or serious.
2. Underlying Offenses
¶ 23 Defendant argues that her underlying offenses are not grave or serious. We agree in part, but conclude that her conviction for conspiracy to distribute a controlled substance is a per se grave or serious offense.
¶ 24 First, we agree with defendant that her conviction for forgery is not a grave or serious crime. Nothing in the facts of this case or Colorado case law suggests otherwise. Accord Deroulet , 48 P.3d at 527 (noting that one offense underlying the defendant's habitual criminal sentence was forgery, but omitting it from the offenses deemed grave or serious).
¶ 25 Second, we assume, without deciding, that defendant's 2012 and 2008 convictions for possession of methamphetamine are also not grave or serious.[2] See Rutter , ¶ 42 (Gabriel, J., dissenting); see also Hargrove , ¶ 28.
¶ 26 Significantly, however, defendant's conviction for conspiracy to distribute a controlled substance (methamphetamine) in the United States District Court of South Dakota is per se grave or serious. Indeed, the facts of this offense highlight its gravity, as her plea included an admission of an agreement to distribute a substantial amount of methamphetamine: 1.5 to 5 kilograms-or up to nearly 12 pounds.
¶ 27 This conclusion does not end our analysis. We must still consider the triggering and underlying offenses as a whole in relation to the severity of the sentence. Deroulet , 48 P.3d at 524-25.
3. Gravity of Crimes Compared to Severity of Punishment
¶ 28 We conclude that the gravity of defendant's offenses as a whole compared to the severity of her thirty-two-year habitual criminal sentence does not merit a remand for an extended proportionality review.
¶ 29 While we have concluded, or assumed, that three of defendant's underlying offenses were not grave or serious, both her other underlying offense of conspiracy to distribute a controlled substance and her triggering offense of possession with intent to distribute are per se grave or serious.[3] It is not necessary for each offense to be grave or serious for a court to conclude that a sentence is not grossly disproportionate.
*759 People v. Strock , 252 P.3d 1148, 1158 (Colo. App. 2010). Defendant was involved in a conspiracy to distribute large amounts of methamphetamine. Then, years later while still on parole for this offense, she was again convicted of a crime involving the distribution of methamphetamine, this time involving both deadly violence and the exchange of narcotics for a weapon.
¶ 30 "Defendant's convictions, in combination, also indicate ... a persistent disrespect and disregard for the rule of law and social norms." People v. Gallegos , 226 P.3d 1112, 1119 (Colo. App. 2009). In the interpretation of defendant's criminal history most favorable to her, she has twice committed felonies related to the distribution of methamphetamine, twice committed felonies related to the possession of methamphetamine, and twice committed felonies while on parole.
¶ 31 Simply put, this is not one of the "exceedingly rare" cases where defendant can successfully challenge the proportionality of a particular sentence. Harmelin v. Michigan , 501 U.S. 957, 1001, 111 S.Ct. 2680, 115 L.Ed.2d 836 (1991) (Kennedy, J., concurring in part and concurring in the judgment) (quoting Solem v. Helm , 463 U.S. 277, 290, 103 S.Ct. 3001, 77 L.Ed.2d 637 (1983) ).
¶ 32 Considering all the offenses and the underlying circumstances as a whole, defendant's thirty-two-year sentence does not raise an inference of gross disproportionality.
III. The Habitual Criminal Statute and Drug Felonies
¶ 33 Defendant also contends the district court lacked authority under the habitual criminal statute to sentence her to a thirty-two-year sentence for a level 2 drug felony. Again, we disagree.
A. Standard of Review
¶ 34 In interpreting statutes, our primary task is to give effect to the intent of the General Assembly. People v. Johnson , 2017 COA 11, ¶ 12, --- P.3d ----. We do so by first looking to the plain language of the statute. Id.
¶ 35 The language at issue must be read in the context of the statute as a whole, and a court's interpretation should give consistent, harmonious, and sensible effect to all parts of the statutory scheme. Id. ; see A.S. v. People , 2013 CO 63, ¶ 10, 312 P.3d 168.
¶ 36 If a statute is ambiguous, we may look for guidance in prior law, statutory history, the legislature's objective, and even the placement of the statute within a piece of broader legislation. Johnson , ¶ 13.
B. Applicable Law
¶ 37 As relevant here, the habitual criminal statute provides that
every person convicted in this state of any felony, who has been three times previously convicted, upon charges separately brought and tried, and arising out of separate and distinct criminal episodes, either in this state or elsewhere, of a felony or, under the laws of any other state, the United States, or any territory subject to the jurisdiction of the United States, of a crime which, if committed within this state, would be a felony, shall be adjudged an habitual criminal and shall be punished:
(A) For the felony offense of which such person is convicted by imprisonment in the department of corrections for a term of four times the maximum of the presumptive range pursuant to section 18-1.3-401 for the class or level of felony of which such person is convicted....
§ 18-1.3-801(2)(a)(I), C.R.S. 2017.
C. Analysis
¶ 38 Defendant argues the habitual criminal statute does not apply to her conviction for a level 2 drug felony. She reaches this conclusion because the habitual criminal statute sets punishment at "four times the maximum of the presumptive range pursuant to section 18-1.3-401," but the sentencing range for drug felonies is found in section 18-1.3-401.5, C.R.S. 2017. Considering the sentencing scheme as a whole, we disagree.
¶ 39 First, the statute says that the sentence multiplier applies to convictions "for any felony." § 18-1.3-801(2)(a)(I). Second, the statute says that the defendant shall be sentenced to four times the maximum "for the class or level of felony."
*760 § 18-1.3-801(2)(a)(I)(A) (emphasis added). The "or level" language was added in 2013 when, in the same bill, the legislature altered sentencing for drug offenses and created levels of drug felonies. Ch. 333, sec. 36, § 18-1.3-801, 2013 Colo. Sess. Laws 1927-28. Prior to these amendments, all felonies were categorized by class, not level. See, e.g. , § 18-1.3-801(2)(a), C.R.S. 2012. Finally, the current habitual criminal statute provides certain exceptions for level 4 drug felonies, § 18-1.3-801(2)(b), C.R.S. 2017, which would be unnecessary if the multiplier did not apply to drug felonies. All this language would be inconsistent if the sentence multiplier did not apply to drug felonies.
¶ 40 Moreover, defendant's interpretation would be inconsistent with the scheme laid out by the rest of the habitual criminal statute. Defendant notes that unlike the sentence multiplier at issue here, the habitual criminal statute's multiplier for defendants with two prior felony convictions expressly applies to defendants convicted of "any class 1, 2, 3, 4, or 5 felony or level 1, 2, or 3 drug felony." § 18-1.3-801(1.5). But just like the sentence multiplier for defendants with three prior felony convictions, this subsection also provides a sentence based on the "presumptive range pursuant to section 18-1.3-401 for the class or level of felony." § 18-1.3-801(1.5)(a). Thus, under defendant's logic, this provision would also apparently not apply to drug felonies despite unambiguous language that the multiplier does apply to sentences for level 1, 2, or 3 drug felonies.
¶ 41 To be sure, the language used by the legislature would be clearer if it expressly referenced section 18-1.3-401.5, which provides the presumptive ranges for drug felonies. Nevertheless, the legislature has evinced an unmistakable intent to multiply the maximum of the presumptive range for drug felonies by four times in cases where the defendant has three or more prior felonies. Any other interpretation would fail to read "statutory provisions as a whole in order to accord consistent, harmonious, and sensible effect to all their parts." A.S. , ¶ 10.
¶ 42 Accordingly, we conclude the district court had authority to sentence defendant to a term of thirty-two years under the habitual criminal statute.
IV. Conclusion
¶ 43 The sentence is affirmed.
JUDGE FURMAN and JUDGE LICHTENSTEIN concur.

The supreme court has granted certiorari on the question "[w]hether a drug possession conviction constitutes a grave or serious offense." Melton v. People , No. 14SC282, 2016 WL 490208 (Colo. Feb. 8, 2016) (unpublished order).

Although the plea agreement lists defendant's 2008 conviction as possession with intent to distribute, the rest of the record clarifies that defendant was convicted of simple possession.

This case is therefore distinguishable from People v. Oldright , 2017 COA 91, --- P.3d ----, where only the defendant's triggering crime was grave or serious.